NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0589n.06

No. 24-5946

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Dec 19, 2025
KELLY L. STEPHENS, Clerk

)
)
AMY JO HICKS,                                               )
)
    Plaintiff - Appellant,                            )      ON APPEAL FROM THE UNITED
)      STATES DISTRICT COURT FOR THE
v.                                                         )      EASTERN DISTRICT OF KENTUCKY
)
COMMISSIONER OF SOCIAL SECURITY,       )                                    OPINION
)
    Defendant - Appellee.                            )
)
)

---

Before: BOGGS, BUSH, and READLER, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Amy Jo Hicks was found eligible for Supplemental Security Income (SSI) benefits in 2007, but her application and approval were wrapped up in her attorney's scheme of benefits fraud. After revelation of this fraud, an initial redetermination, and our subsequent decision in *Hicks v. Commissioner of Social Security*, 909 F.3d 786, 796–97 (6th Cir. 2018) (*Hicks I*), the Social Security Administration (SSA) once again redetermined Hicks's eligibility, finding her not entitled to benefits. Hicks appealed, and the SSA narrowed the issues on appeal considerably by conceding in a filing to this court that the decision of the administrative law judge (ALJ) was not supported by substantial evidence and that Hicks is entitled to SSI benefits. Based on this concession, and for reasons explained below, we **REVERSE** the district court's order and **REMAND** with an order to award Hicks SSI benefits for the relevant time period.

**I.**

Hicks's childhood was marred by frequent, violent abuse by her mentally ill, substance-abusing father. She underwent psychiatric hospitalization as a teenager and attempted suicide when she was only 14 years old. Hicks also struggled in school, dropping out sometime in the ninth grade.

As an adult, Hicks has been abused by multiple romantic partners, and she suffers from nightmares, flashbacks, and other trauma responses because of her lifetime of abuse. She also has a long history of substance abuse.

In 2007, a car accident left Hicks hospitalized with a fractured right elbow. Testing at the hospital also revealed severe emphysema. As explained below, Hicks's emphysema provided the factual basis on which the SSA would later rely to concede her eligibility for SSI benefits.

While Hicks has an extensive medical history, she has a limited work history. At some point, she tried to wait tables, but failed to make it out of the training stage because she "couldn't catch on . . . ." R. 8-8, Hicks Testimony, PageID 901.

Because of her multiple ailments and difficulty working, Hicks filed a claim for SSI, which provides benefits to individuals whose "physical or mental impairment or impairments are of such severity" that they "cannot, considering . . . age, education, and work experience, engage in any other kind of substantial gainful work . . . ." 42 U.S.C. § 1382c(a)(3)(B). She was found disabled and awarded SSI benefits by ALJ David Daugherty in July 2008. But she made the mistake of hiring Eric Conn to be her attorney in this matter.

Unbeknownst to Hicks, Conn conspired with Daugherty and four doctors (including one who provided Hicks's psychological evaluation) to fraudulently obtain and dispense social security benefits. Conn would fill out certain SSA forms ahead of time, manipulating their contents to

satisfy SSA eligibility criteria. The doctors would then sign those forms without adjustments, and Conn would submit them to the SSA. Daugherty—who Conn bribed—would assign Conn's cases to himself and issue favorable rulings.

The SSA first got wind of the scandal in 2006, and in 2011, the Wall Street Journal published an article suggesting that Daugherty and Conn were engaging in fraud. A Senate committee then launched an investigation into Daugherty. The committee issued a report in October 2013 finding that Daugherty inappropriately assigned and approved Conn's cases. Facing the heat of public scrutiny, Conn began to destroy his records, including medical records for active disability clients like Hicks. By July 2014, the SSA had identified over 1,700 benefits recipients whose applications were tainted by Conn's fraud.

Federal regulations require the SSA to "immediately redetermine the entitlement of individuals to monthly insurance benefits . . . if there is reason to believe that fraud . . . was involved in the application . . . for such benefits . . . ." 42 U.S.C. § 405(u)(1)(A). But it was not until 2015 that the SSA notified Hicks that (1) her application was tainted by fraud, (2) her award of benefits was vacated, and (3) she would need to go through redetermination proceedings. After a redetermination hearing in March 2016, a different ALJ denied Hicks's claim.

Hicks sought review in federal district court. She was successful, *see generally Hicks v. Colvin*, 214 F. Supp. 3d 627 (E.D. Ky. 2016), and the SSA appealed to this court. We affirmed, holding that the SSA had violated Hicks's due process rights by denying her the opportunity to rebut the Office of the Inspector General's assertion of fraud as to medical reports solicited by Conn. *Hicks I*, 909 F.3d at 796–97.

It was not until May 2023 that Hicks received a second redetermination hearing. The ALJ again found that Hicks was not disabled during the relevant period. Importantly, while this ruling

necessarily meant that she had been erroneously receiving SSI benefits for 16 years, the SSA decided not to seek return of any allegedly overpaid benefits. The SSA represents that its waiver will not be reopened. Even so, Hicks again appealed to federal district court to secure her benefits going forward. The district court affirmed under sentence four of 42 U.S.C. § 405(g), and Hicks timely appealed.

In August 2023, during the pendency of her appeal to the district court, Hicks submitted a new application for SSI benefits. This application was successful, and she has been continuously receiving SSI benefits since September 2023. Because the overpayment waiver covered her payment up to July 2023 and she has been receiving benefits since September 2023, the only month for which she has not been paid SSI benefits is August 2023—for an amount totaling a little over $600.

There's one more piece of procedural history here. After the appeal to this court was docketed and Hicks filed her brief, the SSA filed a motion in this court for entry of judgment under sentence four of 42 U.S.C. § 405(g) awarding her the unpaid benefits. The motion also sought to hold briefing in abeyance pending resolution of the motion. Hicks opposed that motion. We denied the request to hold briefing in abeyance. We now address the motion for entry of judgment along with arguments raised in the briefing.

## II.

Hicks's opening brief makes several arguments. *First*, she argues that substantial evidence did not support the ALJ's decision because the ALJ failed to properly consider record evidence of her emphysema, borderline intellectual functioning, and psychological impairments. *Second*, Hicks argues that the ALJ failed to apply the proper legal standard when evaluating her intellectual limitations. *Third*, she argues that the agency violated her constitutional due-process rights by

4

failing to apply a rebuttable presumption that evidence of her current disability establishes prior disability and by refusing to appoint a medical expert. *Fourth*, she argues that the rebuttable-presumption error also violated the Social Security Act and the Administrative Procedure Act. *Fifth*, she argues that the ALJ operated under an unconstitutional double for-cause removal protection.

The SSA does not contest any of these arguments in its brief. Instead, it confesses error as to the ALJ's failure to properly consider record evidence of Hicks's emphysema. It argues that the confession of error makes it unnecessary to reach the other issues Hicks raised. And it concludes—echoing its motion for entry of judgment—that we should enter an order directing an award of benefits. But Hicks seeks more than what the SSA proposes. She concedes that we should not address her constitutional arguments. Nonetheless, she urges us to address the merits of the statutory issues she raises to set precedents that could benefit other victims of Conn's fraud.

This court has the "power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Here, both parties agree that the agency decision should be reversed because the ALJ failed to properly consider evidence of Hicks's emphysema and thus the adverse disability determination was not supported by substantial evidence. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)). When a "nondisability determination is not supported by substantial evidence, we must decide whether to reverse and remand the matter for further proceedings or to reverse and order benefits granted." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 865 (6th Cir. 2011).

5

In the mine-run of cases, a remand for further proceedings is most appropriate if substantial evidence does not support the ALJ's decision that the applicant is not disabled. *See Kalmbach*, 409 F. App'x at 865. But "remand for an immediate award of benefits may be made under sentence four of § 405(g)" in certain cases. *Wiser v. Comm'r of Soc. Sec.*, 627 F. App'x 523, 526 (6th Cir. 2015). An award of benefits is proper "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). And remand for consideration of further merits questions "may be foregone in rarer cases . . . where remand would serve no meaningful purpose." *Smith v. Berryhill*, 587 U.S. 471, 488 n.21 (2019).

A remand for immediate award of benefits is the most appropriate disposition here. The parties have resolved through agreement all essential factual issues. Both parties agree that Hicks is disabled, and therefore entitled to benefits, given her emphysema. And while we are not bound to accept the SSA's confession of error, *see Orloff v. Willoughby*, 345 U.S. 83, 87 (1953), such a confession should be "given great weight," *Sibron v. New York*, 392 U.S. 40, 58 (1968).

Moreover, the record supports the confession of error and directly contradicts the ALJ's factfinding on this point. The ALJ characterized Hicks's emphysema as "non-severe," R. 8-8, Second Redetermination Decision, PageID 856, yet her medical records from September 2007 clearly diagnose her with "severe emphysema," R. 8-7, Medical Records, PageID 357 (capitalization omitted). And the ALJ stated that the September 2007 medical records showed no evidence of "shortness of breath or other symptoms," R. 8-8, Second Redetermination Decision, PageID 855, but those records clearly indicate she suffered from wheezing, coughing, and shortness of breath. Simply put, the ALJ's determination that Hicks did not suffer from severe emphysema was not supported by substantial evidence.

6

Hicks's other potential grounds for disability—such as her mental-health issues and intellectual impairments—are therefore non-essential issues, as are any procedural defects with the ALJ's handling of the redetermination process. It would truly "serve no meaningful purpose," *Smith*, 587 U.S. at 488 n.21, to remand with instructions to revisit the redetermination process with greater procedural protections, even if any such apply, given that Hicks and the SSA have agreed on the proper substantive outcome. Such a remand would only waste administrative resources.

Prudence also counsels against addressing the remaining merits issues. Courts should "confine [them]selves to deciding only what is necessary to the disposition of the immediate case." *Whitehouse v. Ill. Cent. R.R. Co.*, 349 U.S. 366, 373 (1955); *see also Wright v. Spaulding*, 939 F.3d 695, 700–01 (6th Cir. 2019) ("[I]f the court's answer to a legal question can make no difference to the parties before it, that question is not part of the case."); *United States v. Burris*, 912 F.3d 386, 410 (6th Cir. 2019) (Kethledge, J., concurring in the judgment) ("[D]ictum is usually a bad idea . . . . (The same criticism goes for alternative holdings.)"). Since the parties agree that Hicks's emphysema entitles her to SSI benefits, no other merits issue raised by Hicks is necessary to the disposition of the immediate case.

Hicks makes a few arguments in response. None persuade.

In her response to the SSA's motion for entry of judgment, Hicks argues that we lack authority to direct an award of benefits without ruling on the merits. And in its motion, the SSA did not concede any of the merits issues before asking us to enter judgment in Hicks's favor. But that changed when the SSA submitted its appellee brief. In that brief, the SSA concedes that Hicks is entitled to disability benefits based on her emphysema. So that provides an obvious merits issue on which to rule before directing entry of benefits.

Hicks's primary argument for why we should address her other merits arguments is that doing so would "prevent the agency from similarly mistreating other applicants" for SSI benefits. Reply Br. 2–3. The cases she cites in support are both class-action cases. But class-action cases are not sufficiently comparable. There, the class representatives actually represent the legal interests of the unnamed class members. *See Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). And, in most class actions, those unnamed class members are bound by the judgment in that case unless they opt out. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). Here, however, Hicks does not actually represent anyone's legal interests other than her own. Other SSI claimants will not be bound by our judgment. *See Hansberry v. Lee*, 311 U.S. 32, 40 (1940). And given that the procedural and statutory questions are not essential to the disposition of the instant case, a future panel of this court would not even be bound by our analysis of those questions. *See Wright*, 939 F.3d at 700.

Hicks also analogizes this situation to the principle from Supreme Court mootness doctrine wherein "a defendant cannot usually moot a claim by simply ceasing the challenged conduct mid-litigation." Reply Br. 5 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC) Inc.*, 528 U.S. 167, 190 (2000)). That situation is also inapposite. When a case is moot, the controversy no longer exists, and we are deprived of jurisdiction. *Patton v. Fitzhugh*, 131 F.4th 383, 392 (6th Cir. 2025). When the government confesses error, as happened here, the controversy is still live, and we still have an obligation to rule on the merits. *See Sibron*, 392 U.S. at 58. And we have done so.

### III.

For the foregoing reasons, we **REVERSE** the district court's order and **REMAND** with an order to award Hicks SSI benefits for the relevant time period.  This ruling renders the SSA's motion for entry of judgment moot.